McCarthy, J.
This was a sexual abuse case without any forensic evidence or eyewitnesses other than defendant and the victim, relegating if to a contest of credibility. Because a different verdict would not have been unreasonable, we “must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony” (People v Romero, 7 NY3d 633, 643 [2006] [internal quotation marks and citations omitted]), while giving great deference “to the fact-finder’s opportunity to view the witnesses, hear the testimony and observe demeanor” (People v Bleakley, 69 NY2d 490, 495 [1987]). The victim testified about the mutual masturbation occurring over a period of approximately nine years, all while he was a minor. Defendant denied ever touching the victim in a sexual manner. He admitted only one incident where the victim, at the age of 14, found a pornographic magazine and began masturbating while defendant was in the room, at which point defendant looked at a similar magazine and fondled himself outside his clothing for two minutes before taking the magazines and putting them away. The victim had previously lied, his descriptions of the incidents *1388 contained some inconsistencies and were vague, and he had some motives to harm defendant. On the other hand, defendant’s testimony also contained inconsistencies, revealed some dishonesty and was partially refuted by other evidence. The jury apparently believed the victim and disbelieved defendant’s testimony. Thus, giving deference to those credibility determinations, the verdict is not against the weight of the evidence (see People v Sapienza, 75 AD3d 768, 769 [2010]; People v Hebert, 68 AD3d 1530, 1531-1532 [2009], lv denied 14 NY3d 841 [2010]).
Despite the evidentiary basis for the verdict, we reverse and remit for a new trial due to procedural errors. County Court erred in denying defendant’s challenge to a prospective juror. Where a prospective juror’s statements raise serious doubts concerning possible bias or the inability to render an impartial verdict, the court must remove that challenged juror for cause unless he or she unequivocally states that he or she can be fair and impartial, set aside any bias, and render a verdict based solely on the evidence (see People v Nicholas, 98 NY2d 749, 751-752 [2002]; People v Chambers, 97 NY2d 417, 419 [2002]). Defendant eventually exhausted his peremptory challenges, so an erroneous denial of defendant’s challenge for cause would constitute reversible error (see CPL 270.20 [2]; People v Nicholas, 98 NY2d at 752).
The denial here was erroneous. Defendant contends that a certain prospective juror had a bias against homosexuality, although defendant concedes that his argument is based upon confusing questions and an ambiguity in the juror’s answers. The answers could have meant that he would not want his child being taught by a teacher that was a homosexual, or that he would not want his child in a class with a homosexual teacher who had been accused of molesting a child.[1] Although the juror stated that he was “not judging homosexuals” and did not “have anything against homosexuality,” his previous answers may have indicated otherwise. In light of this ambiguity and potential bias in a case where a male dance teacher was accused of sexually abusing a male student, the burden was on County Court to ask additional questions to “obtain[ ] unequivocal assurances of impartiality” from this juror (People v Nicholas, 98 NY2d at 752; see People v Chambers, 97 NY2d at 419). The court did not ask this potential juror any questions about homosexuality to clarify his ambiguous answers on that topic.
*1389 On another topic, the same juror stated that he knows that children do lie, but also stated that children “tell the truth 99% of the time.” Upon further questioning, the juror stated that he would listen to a child witness and decide for himself whether that child was telling the truth or lying, but he never disavowed his belief that children almost always tell the truth.[2] Following these discussions on specific topics, County Court asked this juror whether he would be “willing to base [his] verdict on the evidence?”, to which he responded “[y]es.” The court also asked what would happen if, despite the juror having read something in the newspaper or heard allegations, the People could not prove those allegations. The juror responded, “I can say not guilty.” These generic assurances that he would base his verdict on the evidence were insufficient to assure the court of the juror’s fairness, considering his statements indicating possible bias against homosexuals and his stated belief that children tell the truth virtually all of the time.
An agreement to base a verdict on the evidence, in and of itself, is insufficient where that evidence may be viewed from the perspective of a person with these biases or predispositions. County Court should have inquired further and more directly on these troubling aspects of the potential juror’s answers. The record does not show that the juror unequivocally expressed an ability to be fair and render a verdict based solely on the evidence, after setting aside preconceived notions or biases. “It is almost always wise for a trial court to err on the side of disqualification . . . [because e]ven if a juror is wrongly but not arbitrarily excused, the worst the court will have done in most cases is to have replaced one impartial juror with another impartial juror” (People v Culhane, 33 NY2d 90, 108 n 3 [1973] [internal citation omitted]). County Court erred in denying defendant’s challenge for cause regarding that prospective juror, entitling defendant to a new trial (see CPL 270.20 [2]; People v Johnson, 17 NY3d 752, 753 [2011]; People v Nicholas, 98 NY2d at 752; People v McLean, 24 AD3d 1110, 1111 [2005]).
Reversal is also warranted based on County Court’s method of responding to a juror question. In instructing the jurors before sending them home after the first day of deliberations, the court asked if they had any questions. One juror asked, “What happens if we don’t come to a unanimous decision?” Without consulting counsel, the court immediately responded that this was unlikely, “[i]t would have to take probably a week or two weeks of deliberations before that happens,” and the *1390 court had never had to deal with such a situation and was confident the jury could decide the case. Although defendant did not object to this supplemental jury instruction, the court’s failure to consult with counsel prior to responding to the juror’s question constituted a mode of proceedings error that is not subject to the rules of preservation (see People v Kisoon, 8 NY3d 129, 134-135 [2007]). An important purpose of CPL 310.30, which requires the court to give counsel notice of juror requests for further information and discuss the proper response, “is to ensure that counsel has the opportunity to be heard before the response is given” (People v O’Rama, 78 NY2d 270, 277 [1991]). “[C]ounsel should be afforded a full opportunity to suggest appropriate responses . . . [and] the trial court should ordinarily apprise counsel of the substance of the responsive instruction it intends to give so that counsel can seek whatever modifications are deemed appropriate before the jury is exposed to the potentially harmful information” (id. at 278).
County Court did not follow the procedure set forth by the Court of Appeals (see id. at 277-278; accord People v Kisoon, 8 NY3d at 134), as the court did not consult with counsel or inform them of the intended response. The response was essentially a modified Allen charge (see CJI2d[NY] Deadlocked Jury; see generally Allen v United States, 164 US 492 [1896]), but excluded some important aspects of such a charge. The charge was not balanced, as it stated that the court had never experienced a jury that did not reach a verdict and implied that the jurors would reach unanimity even if it took several weeks of deliberations. This was coercive, in that the jurors were not informed that, while keeping an open mind and considering the viewpoints of fellow jurors, they must not surrender their conscientiously held beliefs or acquiesce to pressure to arrive at a unanimous verdict (see People v Aleman, 12 NY3d 806, 807 [2009]; People v Aponte, 2 NY3d 304, 308-309 [2004]). Although O’Rama refers to written inquiries and suggests that they are preferable (see People v O’Rama, 78 NY2d at 277-278), CPL 310.30 is not limited to written notes. The procedure outlined in O’Rama applies equally to oral inquiries and should have been utilized here. Hence, County Court erred by failing to consult with counsel prior to issuing a supplemental instruction and by issuing a version of an Allen charge that was unbalanced and coercive. Defendant’s remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Peters, P.J., Spain, Kavanagh and Egan Jr., JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Warren County for a new trial.

. Although County Court later interpreted the question as whether the juror would want his child removed from a class with a homosexual teacher who had actually molested a child, that interpretation is not supported by the record.

. While the victim was 19 years old when he testified at trial, he was between 6 and 15 years old at the times the crimes were allegedly committed.